HIGGINS, Justice.
 

 Mrs. Ruby White Sterkx, widow of Joseph Sterkx, Jr., appealed from the judgment of the district court approving, as amended, the second provisional account of I. J. DeLatin, executor. The appeal was expressly limited to that portion of the judgment, which orders the payment of the claims of twenty-six ordinary creditors. x
 

 The record shows that the deceased was engaged in business at Alexandria, Louisiana, as a local Jax beer agent for the Jackson Brewing Company of New Orleans, Louisiana. He died on July 7, 1938, leaving a last will and testament in which he appointed Isidore J. DeLatin as executor and, after certain specific bequests, he bequeathed the remainder of his property in the proportion of one-fourth to his mother and three-fourths to his widow. The property, movable and immovable, was appraised in the inventory for more than $50,000. On December 7, 1938, after the executor had duly qualified, he filed a provisional account, proposing to pay the preferred creditors, and listed sixty ordinary creditors for various amounts, aggregating about $21,000, recognized the correctness of their claims and recommended to the court that he be authorized to pay each of them 25 per cent of the amount due. The widow filed a general opposition to the entire account. Prior to the trial of the opposition, satisfactory arrangements were made with reference to the preferred creditors and she dismissed the opposition in favor of twenty-four of the ordinary creditors, leaving thirty-four of them opposed.
 

 After the trial and the judgment she appealed and now argues that twenty-six of the claims recognized were inadequately proved and therefore the judgment erroneously allowed them.
 

 The executor testified that he had had an audit of the deceased’s books made by C. G. Robinson & Company, Certified Public Accountants of New Orleans, and that from the information furnished him by this firm and by W. O. Schonfeld, the deceased’s bookkeeper, he checked the correctness of the claim of each creditor before placing him on the account and that from both the information* obtained from the creditors and the decedent’s books and records, he was certain that the respective amounts were due the various creditors.
 

 W. O. Schonfeld testified that he had been employed as a bookkeeper by the deceased about a year prior to his death and had been continued in that capacity by the executor. He stated that he and the auditors had assisted in the preparation of the provisional account; that he had checked the invoices, bills and other records kept by the deceased with the respective claims
 
 *325
 
 of the creditors and that from personal knowledge, he knew that the merchandise, services, etc., were received by the deceased, except the' item representing the personal cleaning and pressing bill, and that the claims listed and recognized by the executor were correct and due and should be paid.
 

 Grove Stafford, one of the attorneys for the executor, stated that the executor, the auditor, the bookkeeper and he had thoroughly investigated each of the claims and by comparing them with the deceased’s records, ascertained their correctness and then placed them on the account. He stated that due to the fact that the claims of most of the creditors were for small amounts and the creditors were scattered throughout Rapides and Caddo Parishes and other parts of the State and because of the great expense involved in having each of them appear with his dray tickets, receipts and other records, they decided to investigate each claim and if they determined it to be correct, the claimant was placed on the account.
 

 Lambert Broadwell, the credit officer of the Rapides Auto Supply Company, testified that the deceased owed his company the sum of $1,252.23, represented by a $380 promissory note with accrued interest and an open account for tires and tubes sold and delivered to the deceased. The witness stated that he examined the sales tickets and records of the company and was certain that the amount was correct, due and owing.
 

 E, G. Rogers, manager of the French Unique Cleaners of Alexandria, testified that the deceased owed his company the sum of $90.95 for cleaning and pressing and had paid on account of the bill the sum of $25, leaving the above amount due.
 

 It was shown that - the creditors listed for payment were merchants and individuals of good repute and that their claims were checked against the decedent’s books and records, that sworn itemized statements were required where doubt existed and that a careful check of all of the accounts were made before the executor listed them for payment.
 

 The opponent did not offer any countervailing evidence, either parol or written. Neither she nor her attorney demanded that the executor or his attorney or any of the creditors show an itemized sworn statement or requested an opportunity to view their records. Neither did they ask for a subpoena duces tecum nor otherwise ask for the production of any records, but contented themselves by contending that, as the burden of proof was upon each claimant to prove the deceased’s indebtedness to him, it was their view that the evidence was insufficient to establish a prima facie case.
 

 In the case of the Succession of Bauman, 30 La.Ann. 1138, the Court said:
 

 “There is some question as to the proof of some of the items — its sufficiency, completeness, etc. An executor must sustain his charges by proof, but the kind and degree of proof varies according to other facts which may be proved, or which appear on the face of the papers. For instance, an executor whose general man
 
 *327
 
 agement is characterized by fidelity and integrity, will have a presumption raised in his favor of the correctness of his account, and many items charged by such a representative of a succession will be admitted and approved upon slenderer proof than would be required of one who had by his conduct exhibited the purpose to administer for his personal benefit, instead of for that of those who are entitled to the succession, and who had united negligence to rapacity in dealing with the property and funds of the succession.”
 

 In the Succession of Conery, 106 La. 50, 30 So. 294, 295, the Court stated:
 

 : “* * * Mr. Wood, a witness introduced ,on behalf of the administrator, testified that he had been the bookkeeper, cashier, and confidential man of the decedent for more than 30 years; that he drew all of his checks and paid all of his bills after his retirement from business as well as before; that the amounts in question were placed to the credit of the decedent’s individual account; and that, so far as the witness knew, they were never paid by him to the parties entitled to them. As to the items contained in the schedule, and opposed in general terms and without specification, it appears that the succession owned a great many pieces of real estate;.and the schedule represents $18,665.50 of rents collected from various tenants, and $9,214.61 of disbursements, mainly on account of said real estate. In the course of the trial it was found that there were some items which were not properly chargeable to the succession, and the administrator, through his counsel, at once consented and suggested that they should be stricken off. Other items were considered doubtful, and the court struck them off as in case of nonsuit, as has been stated. The account,' as a whole, is verified by the affidavit of the administrator, who placed himself on the stand as a witness, and was subject to cross-examination as to his entire gestión. It was 'also verified generally by the witness Wood, who was personally cognizant of the destination'of most of the money paid out. Our attention has not been called to any particular item which is not considered established by proof, and we agree with the judge a quo that those items not stricken off are sufficiently proved. * * * ”
 

 In the Succession of Padin, 160 La. 223, 106 So. 835, 836, we find:
 

 “The second contention of appellant is that the proof of the correctness of the account is insufficient. The administrator was sworn as a witness on the homologation of the account, and asked to examine it and state whether the various items, disbursements, and proposed disbursements shown thereon were correct. He answered that they were all correct. However, one of the items on the account is for an amount exceeding $500, and appellant invokes article 2277 of the Civil Code, which provides, among other things, that contracts for the payment of money, exceeding $500, must be proved by at least one credible witness and corroborative circumstances. The fact that this item was not opposed, when the account was taken up for homologation, was of itself a sufficient corroborative circumstance of the correctness of the item, which, taken in connec
 
 *329
 
 tion with the evidence of the witness, was sufficient to authorize judgment on it, and, of course, on the remaining items of the account. See Succession of Rabasse, 50 La.Ann. 746, 23 So. 910.”
 

 In the case of Ritchie Grocer Co. v. Dean, 182 La. 518, 162 So. 62, 63, the suit was on an open account and the defendant denied liability. In connection with the sufficiency of the proof, the Court stated:
 

 “Counsel for defendant raised, for our consideration, another proposition — ‘that the evidence in support of the account does not meet the legal requirements because Webb, the bookkeeper, testified that the account was made up from the ledger and not from the original records and, further, that he was not in a position to say that any of the merchandise was actually delivered to Dean’ (defendant.)
 

 “In the case of Horton v. Haralson et al., 130 La. 100, 57 So. 643, this court held (syllabus by the court) : ‘In a suit on open accounts, where the witnesses refresh their memories by the books, and the general trend of the business shows that the goods have been sold and delivered, it is not necessary to prove the actual delivery of each and every item. The testimony made out at least prima facie proof, and it was then incumbent upon the defendants to show wherein the proof was insufficient.’ ”
 

 Counsel for the opponent contends that the testimony of witnesses with personal knowledge of the - delivery of the merchandise and its acceptance by the deceased and that he had not paid for it was necessary and indispensable proof. In answer to this we might say that the deceased’s bookkeeper, Mr. Schonfeld, demonstrated an intimate and personal knowledge of the affairs and transactions of the deceased and described in detail on cross-examination, when requested, what the items represented and how the claims arose. The testimony and evidence offered in support of the correctness of the account were verified and corroborated by the deceased’s own records and, in the absence of evidence to the contrary, certainly established a prima facie case.
 

 Counsel invokes Section 2 of Act No. 11 of 1926 to maintain his position, but it is sufficient to say that the testimony offered by the executor to show the correctness of the account meets the burden of pyoof required by this statute because' the testimony of Mr. Schonfeld, a credible witness of good moral character, corroborated the testimony of the executor and other witnesses as well as the records of the deceased that the amounts were due.
 

 For the reasons assigned, the judgment appealed from is affirmed at the appellant’s cost.
 

 O’NIELL, C. J., absent.